IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANDRIAL YOUNG**                                                                                     **PLAINTIFF**

vs.                                                           CIVIL ACTION No.: 3:24-CV-752-HTW-LGI

**SAM DOBBINS, in his individual capacity;**
**CHARLES HENDERSON, in his**
**individual capacity as interim and current**
**Chief of Police of the Lexington,**
**Mississippi Police Department; THE CITY**
**OF LEXINGTON, MISSISSIPPI; and**
**JOHN DOES 1-3, Lexington Police**
**Officers, in their individual capacities**                                                **DEFENDANTS**

**ORDER**

Before this Court is a Motion for Judgment on the Pleadings [Dkt. 11], filed by Defendant Charles Henderson ("Henderson")[1], said motion being brought pursuant to Federal Rule of Civil Procedure 12(c)[2]. Henderson seeks dismissal of all claims brought against him by Plaintiff Andrial Young ("Plaintiff"), who alleges that Henderson violated his constitutional rights provided to him by 42 U.S.C. § 1983[3].

---

[1] Defendant Henderson is one of three specifically- named defendants and fictitious defendants John Does 1-3. The motion sub judice is brought only by Henderson.

[2] **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56; however, if on such a motion matters outside the pleadings are not presented, and if the motion is granted, leave to amend shall be granted in accordance with Rule 15(a). M.R.C.P. 12

[3] Section 1983 states, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... 42 U.S.C.A. § 1983 (West)

Having reviewed the motion, Plaintiff's response [Dkt. 16]; Henderson's reply [Dkt. 19]; the pleadings on file; and relevant legal authorities, this Court is persuaded to grant Henderson's Motion. The Court's reasoning is set out below.

## I.     JURISDICTION

This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331[4], often hailed as "federal question" jurisdiction. Plaintiff brings claims allegedly arising under the United States Constitution and federal law. Venue is proper in this District under 28 U.S.C. § 1391(b),[5] because the events at issue occurred in Lexington, Mississippi, within the Northern Division of the Southern District of Mississippi.

## II.    BACKGROUND: FACTUAL AND PROCEDURAL HISTORY

On November 22, 2021, three Lexington Police Department ("LPD") officers stopped Plaintiff, an African American male, at a red light in Lexington, Mississippi. These officers included the then-Chief of LPD, Sam Dobbins. The officers claimed they initiated the traffic stop because Plaintiff was driving an automobile and not wearing a seatbelt, a misdemeanor charge which Plaintiff disputes. Plaintiff asserts that the officers, upon approaching his vehicle, stated they smelled marijuana and demanded his permission to search his vehicle. Plaintiff declined the

---

[4] Title 28 U.S.C. § 1331: Federal question. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[5] **(b) Venue in general.**--A civil action may be brought in--
**(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
**(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
**(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action
28 U.S.C.A. § 1391 (West)

search. Plaintiff alleges that the officers then forcibly removed Plaintiff from his car, handcuffed him, and conducted a search, anyway. No marijuana or contraband was found; nonetheless, Plaintiff was arrested and taken to the police station.

The officers issued to Plaintiff a ticket for driving without a valid driver's license and another ticket for lacking automobile insurance. Plaintiff alleges both charges were bogus. The officers then demanded $500 in cash from Plaintiff to secure his release. Plaintiff says his mother, Deborah Powell, paid the money, which Plaintiff describes as a "ransom" as part of an unlawful "Stop-and-Fine" scheme. Following his release, Plaintiff attended multiple court appearances, "forced appearances" says Plaintiff, before the charges ultimately were dismissed. Plaintiff states that he also paid $100 to retrieve his towed vehicle.

According to the Plaintiff, the City Judge ordered LPD to reimburse Plaintiff's fine for the improper citation for "driving without a license", as Plaintiff possessed a valid driver's license at the time of the citation. Further, says Plaintiff, the Judge noted that Plaintiff did not receive a citation for failure to wear a seatbelt; therefore, the Judge ordered Plaintiff's remitted fine[6] for that charge also be refunded[7].

Plaintiff alleges that on December 30, 2021, his mother appeared at the Lexington Police Station to collect said court-ordered reimbursements. He claims that Henderson physically assaulted and arrested his mother, Deborah Powell, at the police station. Defendants state that the matter of Deborah Powell's alleged arrest is the subject of a separate lawsuit. This Court agrees.

---

[6] According to Plaintiff's Complaint, Dobbins "testified that [Plaintiff] paid a fine for not wearing a seatbelt, but LPD did not issue a ticket for that infraction, so the judge ordered that fine be refunded as well."[Dkt. 1 at ¶ 34].

[7] Plaintiff also claims that "since there were no drugs [in the vehicle] and no ticket was issued for drug, the judge ordered everyone to go back to the LPD station and get the citations straightened out." [Dkt. 1 at ¶ 34].

Deborah Powell is not a party to the lawsuit *sub judice*; she has not joined Plaintiff in any pleadings, nor participated in any discovery in Plaintiff's lawsuit before this Court.

Aggrieved over his experience, Plaintiff filed suit against Officers Dobbins; Charles Henderson; the City of Lexington, Mississippi; and John Doe officers. Plaintiff asserts that Henderson violated his rights under the Fourth Amendment[8] to the United States Constitution by unreasonably searching, seizing, and by falsely arresting him. He also alleges Henderson deprived him of his property without due process, and discriminated against him because of his race, therby violating the Fourteenth Amendment[9]. He adds a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO)[10], which statute is found at 18 U.S.C. §§ 1961–1968.

Henderson has now moved for judgment on the pleadings under Rule 12(c), arguing Plaintiff has failed to allege facts showing Henderson's personal participation or supervisory liability in this matter.

### III.    LEGAL STANDARD

A motion under Rule 12(c) is evaluated under the same standard as a motion under Rule 12(b)(6)[11]. *Johnson v. Halstead*, 916 F.3d 410, 414 n.1 (5th Cir. 2019). The Court must accept all

---

[8] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV

[10] The Racketeer Influenced and Corrupt Organizations Act (RICO) is a criminal statute targeted at the infiltration of organized crime into legitimate businesses. The power of RICO lies in its conspiracy provision, based on an enterprise rationale, that allows tying together apparently unrelated crimes with a common objective into a prosecutable pattern of racketeering. See e.g. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

[11] b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: … 6) failure to state a claim upon which relief can be granted;
Fed. R. Civ. P. 12

well-pleaded facts as true and view them in the light most favorable to the plaintiff. The complaint must contain sufficient factual matter to state a claim for relief that is credible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV.    ARGUMENTS OF THE PARTIES

Defendant Henderson argues Plaintiff's allegations do not demonstrate that Henderson was personally involved in Plaintiff's stop, arrest, or the alleged extortion. Henderson further contends that Plaintiff's supervisory liability theory is deficient because no facts establish that Henderson implemented, or was responsible for any policy causing the alleged constitutional violations.

Plaintiff, contrariwise, accuses Henderson of having been the "primary enforcer" of the Stop-and-Fine policy, citing a Department of Justice ("DOJ") report allegedly finding widespread unconstitutional practices by LPD during and after Dobbins' tenure. Plaintiff asserts that Henderson adopted or ratified the Stop-and-Fine policy as Interim Chief of Police and should be liable for the constitutional harms suffered by Plaintiff.

### V.    ANALYSIS

**A. Section 1983 Liability: Personal Participation and Supervisory Responsibility**

Under 42 U.S.C. § 1983, a plaintiff must show that a defendant either personally participated in the alleged constitutional deprivation, or implemented an official policy or custom causally connected to the violation. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

---

A Rule 12(b)(6) motion to dismiss for failure to state a claim argues that the complaint, even if true, does not establish a legally valid claim. A Rule 12(c) motion for judgment on the pleadings is filed after the pleadings are closed and argues that, based on the established facts in the pleadings, the moving party is entitled to judgment as a matter of law. The key difference lies in timing and finality: 12(b)(6) is filed early in the case, while 12(c) comes later and can result in a final judgment.

Supervisory liability attaches only if the supervisor "implemented unconstitutional policies that causally resulted in the constitutional injury" or acted with deliberate indifference to a known risk of constitutional harm. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

In the matter *sub judice*, the alleged facts do not show Henderson was present at Plaintiff's traffic stop, search, or arrest. Plaintiff's Complaint mentions Henderson only in the context of his later tenure as Chief of LPD Police and his alleged continued enforcement of Officer Dobbins' unconstitutional policies. Supervisory liability, however, requires more than such conclusory allegations of enforcement; it demands facts showing the supervisor was indeed the moving force behind the constitutional injury suffered by the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).

Despite Plaintiff's assertions of DOJ findings indicating systemic LPD misconduct, his Complaint does not reasonably connect Henderson's specific conduct or implementation of policies to the alleged violations of Plaintiff's rights on November 22, 2021. The allegations that Henderson became chief *after* Plaintiff's arrest and generalized statements that he "ratified" or "expanded" the Stop-and-Fine policy are only naked suppositions unclothed by any submitted, credible proof. This Court, thus, must dismiss this claim.

**B. Qualified Immunity**

Qualified immunity shields officials from liability unless a plaintiff shows both that a constitutional right was violated and that the defendant's conduct was objectively unreasonable under clearly established law at the time. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251–52 (5th Cir. 2005). Plaintiff's Complaint fails to allege facts supporting either prong: it does not show

Henderson's personal involvement, nor that Henderson's actions violated clearly established law. Henderson, thus, remains entitled to qualified immunity.

## C. Fourth Amendment Claims

Plaintiff's claims for unreasonable search, seizure, and false arrest are rooted in the Fourth Amendment. But these require a defendant's personal participation or direction of the acts giving rise to the alleged constitutional deprivation. *Alexander v. Smith*, 561 F. App'x 421, 424 (5th Cir. 2014). Here, again, Plaintiff does not allege Henderson was present or directed the search, arrest, or detention, nor does he plead facts showing Henderson ordered officers to act unlawfully against him. The accusation is fatally defective.

## D. Fourteenth Amendment Due Process Claim

Under *Graham v. Connor*, 490 U.S. 386, 395 (1989), if a constitutional claim is covered by a specific amendment (here, the Fourth Amendment), it must be analyzed under that amendment rather than the more general due process clause of the Fourteenth Amendment. Plaintiff's deprivation of property claim is based on the same alleged facts supporting his Fourth Amendment claims. Plaintiff has not alleged any personal participation by Henderson in the towing of Plaintiff's truck; nor does Plaintiff claim that Henderson personally demanded the $400-$500 for Plaintiff's release. [*See generally* Doc. No. 1]. Accordingly, his Fourteenth Amendment claim must be dismissed for failing to state a separate constitutional violation.

## E. Racial Discrimination Claim

Plaintiff's racial discrimination claim under the Equal Protection Clause requires tenable factual allegations that the defendant personally took discriminatory action against him, or implemented policies intended to discriminate against a protected class of persons which includes Plaintiff. *Harris v. Dobbins*, No. 3:23-cv-00123, 2024 WL 987654, at *4 (S.D. Miss. Jan. 15,

2024). Plaintiff fails to allege facts showing Henderson's personal involvement in racially motivated conduct during the stop, arrest, or prosecution.

Plaintiff's factual allegations seek to establish Dobbins and other officers conducted the stop and demanded cash for Plaintiff's release. Plaintiff alleges that Henderson later became Chief and had a leadership role in the department; however, without factual allegations tying Henderson's individual conduct or policy decisions to Plaintiff's specific stop and arrest, the Complaint does not meet the plausibility standard required by *Twombly* and *Iqbal*. This Court, therefore, must dismiss Plaintiff's racial discrimination claim against Henderson.

### F. Civil RICO Claim

To succeed on his civil RICO claim, Plaintiff must show a violation of one or more of the four subsections of 18 U.S.C. § 1962 [12]. *See* 18 U.S.C. § 1964(c)[13]; *Calcasieu Marine Nat'l Bank*

---

[12] **(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C.A. § 1962 (West)

[13] Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which

*v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991). Reduced to its three essential elements, a civil RICO claim must include: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Calcasieu,* 943 F.2d at 1461.

> Plaintiff alleges violations of subsection (c) of § 1962 which states:
>
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(c) (West)

To successfully plead his RICO claim under § 1962(c), Plaintiff must plead specific facts that, if true, would establish that each predicate act was in fact committed by the Defendants. See *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989) (racketeering activity is defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead). Additionally, "a RICO plaintiff must plead the specified facts as to each defendant. It cannot lump together the defendants." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (cleaned up).

The predicate act pled by Plaintiff is extortion in violation of Mississippi Code § 97-3-82(2), which provides: "[a] person is guilty of extortion if he purposely obtains or attempts to obtain property of another or any reward, favor, or advantage of any kind by threatening to inflict bodily injury on any person or by committing or threatening to commit any other criminal offense, violation of civil statute, or the public or private revelation of information not previously in the

---

the conviction becomes final.

18 U.S.C.A. § 1964 (West)

public domain for the purpose of humiliating or embarrassing the other person, without regard to whether the revelation otherwise constitutes a violation of a specific statute." Plaintiff has not pled that Henderson threatened to inflict bodily injury, threatened to commit any other civil or criminal offense, or threatened to reveal embarrassing information. Plaintiff fails to attribute specified facts as to each Defendant. The facts, as pled, thus fail to rise to the level of extortion under Mississippi law.

Plaintiff also is required to show that "the defendant's alleged violation proximately caused [his] injury." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461-62 (2006). Plaintiff, again, does not allege that Henderson extorted him or caused him any injury.

Finally, fatal to Plaintiff's RICO conspiracy claim under 18 U.S.C. §1962(c) is his failure reasonably to allege an agreement between the Defendants. To demonstrate a RICO conspiracy claim, plaintiffs must allege that the individual defendants agreed to commit a substantive RICO offense and knew of and agreed to the overall objective of the RICO offense. Plaintiff has not alleged any facts pointing to an agreement between tor among the Defendants. Conclusory allegations cannot survive a motion to dismiss. See *Iqbal*, 556 U.S. at 678.

## VI. CONCLUSION

Since Plaintiff's Complaint fails credibly to allege Defendant Charles Henderson's personal involvement, supervisory liability, or objectively unreasonable conduct violating clearly established law, this Court finds that all claims against Defendant Henderson must be dismissed.

IT IS, THEREFORE, ORDERED that Defendant Charles Henderson's Motion for Judgment on the Pleadings [Dkt. 11] is GRANTED. All claims against Charles Henderson in his individual and official capacities hereby are DISMISSED.

**SO ORDERED AND ADJUDGED this the  12th   day of August  , 2025.**

                                        **/s/HENRY T. WINGATE**
                                        **UNITED STATES DISTRICT COURT JUDGE**